Lloyd J. Blood, an Infant, by Harold Blood, His Guardian ad Litem, Appellant, Respondent, v. Bessie Colby, Respondent, Impleaded with Norman Colby, Appellant.

Harold Blood, Appellant, Respondent, v. Bessie Colby, Respondent, Impleaded with Norman Colby, Appellant.

Fourth Department, November 10, 1932.

William J. Darch, for the plaintiffs.

Harold J. Adams [Percy R. Smith of counsel] for the defendants.

THOMPSON, J. Upon plaintiffs' motions for a new trial on the ground of newly-discovered evidence, the Special Term denied them as to one defendant, and granted them as to the other. Here we have cross-appeals from both of these determinations. The defendant as to whom the motion was denied is the owner of the car involved in the accident in which the infant plaintiff was injured, and upon which the action is based. She was not in the car or present at the time or place of the accident, but she is liable by statute. (Vehicle & Traffic Law, § 59; Psota v. Long Island R. R. Co., 246 N. Y. 388; Gochee v. Wagner, 257 id. 344, 347.) The defendant as to whom the motion was granted is the son of the owner of the car and was driving it at the time of the accident. Defendant driver, while engaged in backing the car out of an alley and into a street, struck plaintiff, a boy six years of age, as he was riding a tricycle on the sidewalk across the alley. At the trial defendant driver testified that he sounded the horn of the car, looked back continuously and was " just moving " from the time he started to back the car to the time of the accident.

The accident occurred April 18, 1931, in the village of East Pembroke in Genesee county, where all of the parties reside, and the actions were begun December 21, 1931. The trial was had at Batavia on February 3, 4 and 5, 1932. The judgments and orders denying motions for new trials were entered April 13, 1932. Sometime prior to the trial plaintiff, guardian ad litem, personally interviewed neighbors residing in the vicinity of the place of the accident in an effort to find witnesses to testify whether or not defendant

driver, Norman Colby, blew his horn, and the rate of speed at which the car traveled while backing out of the driveway. He succeeded only in finding Julia Miller, a passenger in the car, who signed a written statement that no horn was blown; that the automobile was proceeding at the rate of between ten and fifteen miles an hour at the time of the accident, and that at all times the driver was looking to the front of the car; but at the trial this witness not only failed to swear to these facts but testified to the contrary.

The newly-discovered testimony presented consists of the statements of four witnesses to the effect that a short time after the accident the defendant Norman Colby, the driver of the car, said in the presence of three of them on one occasion, and of one of them on another, that he, the driver, was entirely to blame for the accident; that he did not look; was in a hurry, and backed out of the alley rapidly; and in the presence of two of them at one time, and of one at another, that he did not sound his horn; that after the trial two of the witnesses had a conversation with him, in which they upbraided him for his failure to testify in accordance with the statements that he had made; that he denied that he had so testified, and did not deny having made the statements; that one of the affiants then told him that if he had testified falsely in these respects he had done a grave injustice and should correct the mistake; that he then stated that he would go home and talk it over with his mother, but that he was afraid if he confessed the authorities would make trouble for him, and would take away his license; that a week or ten days afterwards defendant witness again visited affiants' place of business and said in the presence of two of them that he had consulted an attorney and was advised that if he did not want to get himself into trouble, to keep his mouth shut; and that he was afraid to change his testimony. In the latter part of April, one of the affiants imparted the fact of these statements to plaintiff guardian, who communicated them to his attorney. The attorney then procured the necessary affidavits, some of which were verified May twentieth, prepared the papers on this motion and served them on or about May 27, 1932. We cannot say that plaintiff failed to exercise reasonable diligence in discovering the new testimony, or in bringing on the motion for a new trial more promptly. The record does not support a conclusion that he has been guilty of laches in any respect. Ordinary diligence with respect to discovery of evidence before trial is all that is required. On all the facts it appears that plaintiff proceeded with reasonable promptness in endeavoring to ascertain the new testimony and in bringing on the motion after he became aware of it. Moreover, the court possesses inherent power to grant

such a motion where the ends of justice require it, even though a technical compliance with these requirements be not shown. (*Barrett* v. *Third Avenue R. R. Co.*, 45 N. Y. 628, 632; *Frohlich* v. *Zeltzer*, 185 App. Div. 103, 110; *Keister* v. *Rankin*, 34 id. 288, 292; *Hess* v. *Sloane*, 47 id. 585, 590, 591.)

As already appears, these facts were deemed sufficient to require a new trial of the action as against the driver, but the Special Term felt that they were not sufficient to require a new trial as against the owner, the statements not having been made as a part of the *res gestæ* and the owner not having been present when they were made. Defendant owner's liability is statutory. While the relationship is said to be in the nature of master and servant and principal and agent, it rests entirely upon the statute which creates it. (Vehicle & Traffic Law, § 59; *Psota* v. *Long Island R. R. Co.*, *supra; Gochee* v. *Wagner, supra.*) The driver was the sole witness for the defendants. His testimony was of the utmost importance, the whole defense resting upon it. This is not a case where a new trial is sought solely to enable the moving party to impeach a witness. (*Croughan* v. *N. Y. Mutual Benevolent Soc.*, 179 App. Div. 211.) The new testimony is not impeaching evidence within the meaning of the rule. (*Keister* v. *Rankin, supra.*) Newly-discovered evidence contradicting the evidence of a witness upon a material issue is in general a sufficient ground for applications of this sort. (*Hess* v. *Sloane, supra;* Baylies on New Trials & Appeals [3d ed.], pp. 842, 846.) Defendant driver, Norman Colby, who testified both for himself and as a witness for his mother, the defendant owner, gave important evidence of a convincing nature, which was the only testimony offered by the defendants in their behalf. If he testifies upon a second trial — and it would seem necessary for defendants to again use him as a witness — he could be interrogated as to what plaintiff claims he had previously said to the newly-discovered witnesses. Upon his denying such statements, the new witnesses may be sworn to discredit him as a witness, both for himself and his mother. Such testimony of the new witnesses is not " impeaching " testimony within the meaning of the rule. It is direct testimony tending to render unbelievable material testimony of the witness, Norman Colby, who gave " evidence of intrinsic probative value " which was the only evidence offered by defendants support of the verdict. (*Bloch* v. *Szczukowski*, 229 App. Div. 394, 396.) It appears that one of the suggested new witnesses is a brother-in-law of plaintiff guardian, and that another is that witness' father. These facts may be given to the jury on a new trial on the question of the witnesses' bias but they afford no reason for the denial of this motion. If the verdict rests

upon false testimony, it should not stand. This question cannot be determined on affidavits. (*Shanahan* v. *Feltman*, 154 App. Div. 809, 813.)

In all the circumstances we think that the ends of justice require that there should be a new trial of this action as to both defendants.

For these reasons the order, in so far as it grants the motion, should be affirmed, and in so far as it denies the motion, should be reversed, with one bill of costs to plaintiff, appellant, respondent.

All concur, except EDGCOMB, J., who dissents and votes for reversal and denial of the motion as to the defendant Norman Colby, and affirmance as to the defendant Bessie Colby.

In each case: Order affirmed as to the defendant Norman Colby, and reversed as matter of discretion as to defendant Bessie Colby, with one bill of costs to the plaintiff.