WILLIAM POLLOCK, Appellant, v RAPID INDUSTRIAL PLASTICS
Co., INC., Respondent, et al., Defendant.

Second Department, December 30, 1985

APPEARANCES OF COUNSEL

*Malone, Dorfman & Tauber, P. C. (Stephen Kunken* of counsel), for appellant.

*Nathan Cyperstein (Steve S. Efron* of counsel), for respondent.

## OPINION OF THE COURT

GIBBONS, J.

At issue on this appeal is whether the circumstantial evidence adduced at trial was sufficient to establish a prima facie case of negligence as against defendant Rapid Industrial Plastics Co., Inc., under the doctrine of res ipsa loquitur ("the thing speaks for itself"). Because we conclude that it was, we reverse so much of the order and judgment as was in favor of defendant Rapid Industrial Plastics Co., Inc., and grant a new trial.

Plaintiff William Pollock (hereinafter plaintiff) testified that on December 1, 1975 he was returning by car from New England with his wife. As he proceeded up the entrance ramp to the Bruckner Expressway, he saw a van ahead, then looked to his left, saw an opening in the traffic and accelerated to meet it. When he looked forward again, the van had stopped. A slight collision on the entrance ramp resulted in locked bumpers. The two drivers exited their vehicle to disengage their bumpers. The next recollection plaintiff had was waking up on the ground.

Plaintiff's wife, now deceased, testified at an examination before trial* that while she was watching her husband dislodge the bumper, a tire rolled past and hit him in the back, rendering him unconscious. She stated that the tire was traveling so fast, she thought that it killed him. Mrs. Pollock first saw the tire when it was about five feet away from her husband, and did not see where it came from.

When plaintiff regained consciousness, the traffic had backed up behind his car on the entrance ramp. Several bystanders helped him place the tire into his trunk. He described it as standing waist high and too heavy for one person to lift. The tire had an identification tag stapled just below the tread. The tag bore the name "Rapid Plast" and the number "57-022", and was admitted into evidence, along with photographs of the offending tire.

---

* The full transcript of her testimony at the examination before trial was read into evidence.

Also admitted into evidence was an invoice from General Tire Service (General), with whom defendant Rapid Industrial Plastics Co., Inc. (Rapid) had been doing business for 10 years. The invoice, made out to Rapid, documented the repair of two flat truck tires, delivery of the repaired tires to Rapid on November 24, 1975, one week before the accident, and the signature of a Rapid employee authorized to sign for their receipt. One of the tires on the invoice bore the work order number "57-022", thus matching the number of the tag introduced into evidence.

General's store manager testified that tags such as the one in evidence were used by General, and affixed to tires needing repair as a means of identifying the owner. Each tire received a tag indicating the customer's name, the tire's serial number and the type of repair needed. No tags were reused. The tags were affixed to the tires with staples near the tread area on the shoulder, in precisely the manner described by the plaintiff. Most important, General's manager testified that between November 24, 1975 and December 2, 1975 there was only one tire bearing that serial number and work order number.

The testimony of Rapid's bookkeeper at an examination before trial was also admitted into evidence. She testified that Rapid, which owned eight tractor trailer trucks and employed seven drivers at the time of the accident, did not maintain any records which would indicate whether one of its trucks was traveling on the Bruckner Expressway, a heavily traveled commercial route, on December 1, 1975. No records were maintained indicating driver routes. In addition, she testified that she had checked and found that Rapid reported no tires stolen after November 24, 1975, the date of delivery of the tire in question.

At the close of plaintiff's case, Rapid moved to dismiss as against it on the basis that the foregoing evidence failed to establish any negligence on Rapid's part, and failed to connect Rapid with the offending tire. After hearing extensive argument, the trial court denied the motion while at the same time indicating its reluctance to do so based upon its belief that plaintiff's case was insufficient to go to the jury. Thereafter, Rapid declined to offer any evidence, and again moved for a dismissal. Notwithstanding its earlier refusal to dismiss at the close of plaintiff's case, the court granted the motion. The court held that there was a failure of proof with regard to Rapid's ownership or possession and control of the offending

tire, and that plaintiff's case placed inference upon inference which the court found "impermissible". We disagree.

In our view, plaintiff established a prima facie case of negligence against defendant Rapid under the doctrine of res ipsa loquitur, which, in its most often quoted form, states: " 'There must be reasonable evidence of negligence; but where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care' " (Prosser and Keeton, Torts § 39, at 244 [5th ed], quoting *Scott v London & St. Katherine Docks Co.,* 3 H & C 596, 159 Eng Rep 665 [1865]).

The doctrine of res ipsa loquitur represents "a common sense appraisal of the probative value of circumstantial evidence" and is not invoked unless the evidence shows "at least probability that a particular accident could not have occurred without legal wrong by the defendant" *(see, Galbraith v Busch,* 267 NY 230, 234). It "allows a plaintiff to rest his case rather more heavily on 'circumstantial evidence'; that is, on evidence which to a greater extent than 'direct' evidence, relies, in leading the trier of fact from the evidence to the conclusion sought to be proved, upon the process of reasoning known as inference" *(see, Panico v American Export Lines,* 213 F Supp 116, 118; *see also,* Prosser and Keeton, Torts § 39, at 242-243 [5th ed]). Evidence of the attendant circumstances may be sufficient for an inference of negligence without proof of any specific negligent act *(see, Levine v Brooklyn, Queens County & Suburban R. R. Co.,* 134 App Div 606), and is deemed sufficient " 'if it supports the inference of causation even though it does not negative the existence of remote possibilities that the injuries were not caused by the defendant or that the defendant was not negligent' " (1B Warren, New York Negligence, Proof of Negligence, § 5.11 [1], at 546 [2d ed], quoting from *Consalvo v Grosso,* 35 AD2d 791, 792).

Specifically, under New York law, the circumstantial evidence must establish the following elements: " '(1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff' " *(Corcoran v Banner Super Mkt.,* 19 NY2d 425, 430, *mod on remittitur* 21

NY2d 793 [quoting from Prosser, Torts § 39, at 218 (3d ed)]; *Moeller v Pearl,* 78 AD2d 540, 541; *Weeden v Armor Elevator Co.,* 97 AD2d 197, 203).

We find that the evidence established the three elements required for application of the doctrine. Regarding the first element, res ipsa loquitur applies when a wheel detaches from a vehicle or when a transported object falls from a tractor trailer *(see, Spica v Connor,* 56 Misc 2d 364; *Polk v Sherman Transfer Co.,* 3 AD2d 882; *see also,* Ann., 66 ALR2d 1255; Ann., 79 ALR3d 346). Accordingly, whether the detached tire had been on a wheel or was a spare on a rim which fell from a truck, the first element was satisfied. A fully inflated truck tire mounted on a rim rolling down an expressway at high speed is the sort of occurrence which does not usually happen unless someone has been negligent by failing to properly secure and maintain the tire. Regarding the third element, it cannot be stated that plaintiff contributed to the accident.

Trial Term, apparently questioning satisfaction of the second element, in effect, found that no prima facie case could be made out unless inference is placed on inference and that evidence that the event was caused by an instrumentality exclusively in the control of Rapid was lacking. Our dissenting colleague would affirm that finding.

Initially, there is no rule of evidence which prohibits placing an inference upon an inference, for in "innumerable instances inferences are built upon inferences" *(see,* Fisch, New York Evidence § 164, at 94 [2d ed]). The rule in this State is "that *inference* may be based on *inference,* that inference may not be based upon *conjecture,* nor conjecture upon inference to prove a fact or to serve as the basis for an ultimate conclusion * * * Clearly, an inference can be based upon a fact which is itself based upon circumstantial evidence * * * if the first inference is a reasonably probable one, it may be used as a basis for a succeeding inference" (2 Bender, New York Evidence § 48.01, at 11-12). In addition, "[c]ircumstantial evidence may, of course, be sufficient to sustain a finding of negligence. All that is involved * * * is a *series* of natural and logical inferences from the facts proven" *(see, Markel v Spencer,* 5 AD2d 400, 403, *affd* 5 NY2d 958; emphasis supplied). If the statement of the rule by Trial Term that an inference may not be placed on inference means simply that the jury could not be allowed to draw an inference from proof which did not point to the inference with sufficient probability, then we do not disagree with its meaning, although "the form of statement is unfortu-

nate and misleading" (2 Harper and James, Torts § 19.4, at 1071; *accord,* Richardson, Evidence § 148 [Prince 10th ed]). However, we find that the "ultimate inference" of Rapid's exclusive possession and control can properly be drawn and each intervening inference is "sufficiently probable to create a reliable chain of inferences" *(see,* Richardson, Evidence § 148, at 119 [Prince 10th ed]).

Looking at the evidence presented by plaintiff, the direct evidence established, *inter alia,* that a rimmed truck tire caused his injuries, that he took photographs of the injury-producing tire, and that he removed a stapled repair tag bearing the name "Rapid Plast" and number "57-022" from the area under the tread. Additionally, General Tire Service delivered a repaired truck tire to its owner, Rapid, on November 24, 1975, one week prior to the accident, and it was signed for by an employee authorized to do so.

Giving plaintiff the benefit of every reasonable inference *(see, Sagorsky v Malyon,* 307 NY 584, 586), it is probable that the invoice to Rapid, owner of eight trucks, from General was for repair of the same tire which injured plaintiff. This inference is supported by circumstantial evidence connecting the tag recovered by plaintiff with General's invoice, i.e., both identified Rapid Plastics; both contained the work order number "57-022" which General assigned to only one repaired tire during the period in question; General used the type of identification tag recovered by plaintiff; General affixed tags to tires (to identify their owners) at the same locations and in the same manner as described by plaintiff; and, finally, one week was a reasonable period for a tag stapled to a tire by General to have remained thereon.

This first inference that the tire repaired by General was the same tire which struck plaintiff, being a reasonably probable one, may be used as a basis for a succeeding inference (2 Harper and James, *op. cit.* § 19.4, at 1071). Therefore, it may be inferred with reasonable probability, if not certainty, from the invoice that Rapid owned and exercised exclusive control over the tire as of November 24, 1975, the date the repaired truck tire was delivered to Rapid and receipt of the tire was acknowledged. Indeed, plaintiff is aided by evidentiary presumptions—that possession of tangible property, i.e., the tire, unexplained by other circumstances, creates a rebuttable presumption of ownership and that ownership is presumed to continue *(see,* Richardson, Evidence §§ 74, 75 [Prince 10th ed]). No evidence was presented to rebut the presumptions of

continuing ownership and possession; in fact, the testimony of Rapid's bookkeeper strengthens and supports an inference of continuing possession. Furthermore, "[w]here the instrumentality which was the proximate cause of the accident was identified as belonging to the defendant, it was appropriate to infer that it was under the operation and control of the defendant * * * and placed at the scene of the occurrence for the defendant's benefit" (*Demogenes v Village Carting Co.,* 44 AD2d 155, 156; see also, *Norris v Kohler,* 41 NY 42, 44-45 ["The property being proved to belong to the defendant * * * a presumption arises that it was in use for his benefit, and on his own account * * * No proof was given * * * separating the ownership from the possession and the presumption of law is, that the wagon and horses of the defendant were in use in his service, and on his account"]). Accordingly, exclusive possession and control as of December 1, 1975 is also established. Taken with the evidence of the tire's presence in The Bronx on that date, the only necessary inference is a reasonably probable one and is supported by an evidentiary presumption that the tire traveled to The Bronx on one of defendant's eight trucks, i.e., that it was "in use in [its] service, and on [its] account" (*Norris v Kohler, supra,* at p 45). In the absence of any evidence offered by defendant, speculation would be required to produce a different explanation.

That plaintiff introduced only pictures of the tire which struck him, and not the tire itself, was not fatal to his case. Notwithstanding that the serial number on the tire could not be matched to the serial number on the invoice, the evidence was sufficient to establish Rapid's ownership and control of the tire with reasonable certainty. The tag bearing the name "Rapid Plast" with the work order number matching General's invoice to Rapid negated any inference that the tag affixed to the tire which caused the injury was placed there by another tire repair company or for another truck owner. Further, the testimony by Rapid's bookkeeper precluded an inference that the tire was stolen from Rapid and transported to the Bruckner Expressway by someone other than Rapid.

In any event, the exclusive control requirement of res ipsa loquitur is not an absolutely rigid concept. It is "subordinated to its general purpose, that of indicating that it *probably* was the defendant's negligence which caused the accident" (see, *Corcoran v Banner Super Mkt.,* 19 NY2d 425, 432, *supra; Payless Discount Centers v 25-29 N. Broadway Corp.,* 83 AD2d 960, 961; see also, *Cameron v Bohack Co.,* 27 AD2d 362, 364).

We have previously stated: " 'The logical basis for [the control] requirement is simply that it must appear that the negligence of which the thing speaks is probably that of defendant and not of another' " (*Weeden v Armor Elevator Co.,* 97 AD2d 197, 206, *supra,* quoting from 2 Harper and James, *op. cit.* § 19.7, at 1085). The requirement of exclusive control should not be employed in a manner which nullifies the doctrine of res ipsa for the "extent of defendant's control should, of course, constitute one of the factors which enters into the determination of negligence, but all that should be required in this respect is that defendant have the right to control and the opportunity to do so" (Fisch, New York Evidence § 1138, at 656 [2d ed]; *accord,* Prosser and Keeton, Torts § 39, at 250 [5th ed]).

Accordingly, we conclude that the element of control was established as against Rapid, and the plaintiff's case should have been submitted to the jury on the theory of res ipsa loquitur.

WEINSTEIN, J. (dissenting). At issue here is the propriety of Trial Term's dismissal of the complaint at the close of testimony.

On December 1, 1975, plaintiff was injured when he was struck from behind by a detached truck tire mounted on a rim while he was standing on an entrance ramp adjacent to the Bruckner Expressway after a minor vehicular accident. Plaintiff neither saw where the tire had come from nor realized what hit him. Mrs. Pollock first observed the tire rapidly rolling along the ground when it was some five feet away from her husband.

The record is utterly devoid of any explanation for the occurrence. It is subject to speculation whether the tire flew off the axle of a passing truck, was dropped from the cargo hold of a carrier or was abandoned along the side of a road and propelled into motion by a passing vehicle.

Plaintiff sought to prove his case through the introduction of a tag which he alleged was attached to the tire. This tag did not have any identification on it other than the word "Rapid Plast" and a tag number. In addition, he introduced an invoice from General Tire Service, which repairs tires. The invoice showed that Rapid Industrial Plastics Co., Inc., had accepted delivery of a tire with this tag number at its Brooklyn location from General Tire Service on November 24, 1975. Lastly, he introduced two photographs of the tire, but not the

tire itself, which was in his possession. There was no testimony to identify the tire in the photographs as the one which was delivered to respondent. In addition, there was no evidence introduced to show how the tire, originally delivered to Brooklyn, ever came to strike plaintiff while in The Bronx. Plaintiff sought to prove the case by circumstantial evidence based on respondent's acceptance of delivery of the tire seven days prior to the accident.

I find no merit to plaintiff's assertion that the case should have gone to the jury on the doctrine of res ipsa loquitur. What is lacking from the instant case for the application of that doctrine is evidence that the event was caused by an instrumentality exclusively in the control of Rapid Industrial Plastics Co., Inc. *(see, Corcoran v Banner Super Mkt.,* 19 NY2d 425). Evidence identifying the property as belonging to respondent at an earlier point in time can hardly substitute for proof of sole control. It is axiomatic that "without proof of control, an essential predicate for the application of the doctrine of *res ipsa loquitur* was absent" *(see, Interested Underwriters at Lloyds v Associated Ceilings Corp.,* 55 NY2d 635, 637). As Rapid Industrial aptly notes, to infer from its mere receipt of a tire on one date that it exercised exclusive control at some later date would require an impermissible series of inferences. This mode of reasoning is "almost classic in heaping inference upon inference to achieve a desired result" *(Zellman v Metropolitan Transp. Auth.,* 83 AD2d 144, 150 [concurring opn of Gulotta, J.]).

Inasmuch as a reasonable view of the evidence does not support defendant Rapid Industrial's sole control of the instrumentality which caused the harm, application of res ipsa loquitur is inappropriate and dismissal is warranted.

LAZER, J. P., and O'CONNOR, J., concur with GIBBONS, J; WEINSTEIN, J., dissents and votes to affirm the order and judgment appealed from, with an opinion.

Order and judgment of the Supreme Court, Nassau County, entered March 6, 1984, reversed insofar as appealed from, and new trial granted, with costs to abide the event.